J-S48030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IN JOONG KIM | : | |
| | : | |
| Appellant | : | No. 3607 EDA 2018 |

Appeal from the PCRA Order Entered November 15, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0006335-2016

BEFORE: BOWES, J., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.: **FILED OCTOBER 16, 2019**

In Joong Kim ("Appellant") appeals from the order denying his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. We affirm.

This case arises from Appellant sexually assaulting his niece, Y.S., when she was ten years old. Y.S. moved with her parents and her brother to the United States from South Korea in April 2001; they lived in Montgomery County with Y.S.'s maternal aunt and Appellant who was maternal aunt's husband. N.T., 9/18/17, at 49–50, 51, 75, 115–116. Y.S. and her brother would stay with Appellant after school while their parents worked at Appellant's beauty supply store. *Id.* at 51–54, 78, 118–120, 123; N.T.,

_____

[*] Retired Senior Judge assigned to the Superior Court.

9/20/17, at 17–18.  On three occasions, Appellant sexually assaulted Y.S. in Appellant's bedroom, while Y.S.'s brother was downstairs watching television. N.T., 9/18/17, at 57, 66, 80–85, 86–87, 104.  On the third occasion in late February, early March 2002, Appellant threatened to kill Y.S. and her brother if she told anybody about the assaults.  *Id.* at 85–86; N.T., 9/19/17, at 155–156.

After the third assault, Y.S. told her mother on March 3, 2002, what Appellant had been doing.  N.T., 9/18/17, at 86, 107; N.T., 9/20/17, at 6–10, 26.  Y.S.'s mother confronted Appellant at a Wednesday-evening church service in March 2002.  N.T., 9/19/17, at 78–80; N.T., 9/20/17, at 12–13. After the confrontation between Y.S.'s mother and Appellant, Appellant flew between the United States and S. Korea several times and eventually absconded to S. Korea on June 22, 2002, where he remained until his return to the United States on July 23, 2016.  N.T., 9/18/17, at 4–5; N.T., 9/19/17, at 101; N.T., 9/20/17, at 45–46, 52–55, Exhibits C-9, C-10, C-14, and C-15.

Y.S. and her parents reported the abuse on April 16, 2002, and Y.S. spoke with the police on April 24, 2002.  N.T., 9/18/17, at 100, 105, 118; Exhibits D-1, C-11; N.T., 9/19/17, at 14, 29, 114–115; N.T., 9/20/17, at 16. Following an evaluation of Y.S. at Children's Hospital of Philadelphia on May 2, 2002, test results returned positive on May 6, 2002, for chlamydia trachomatis, a sexually transmitted disease.  N.T., 9/19/17, at 39, 57–58, Exhibits C-4, C-7.  Y.S. gave a second statement to the police on June 26,

2002. N.T., 9/19/17, at 122, 143–144, Exhibit D-2; N.T., 9/20/17, at 17, 57. Dr. Steven Shapiro examined Y.S. on July 8, 2002, and found that she was a victim of abuse. N.T., 9/19/17, at 60–61, 65.

After Y.S. gave her second statement on June 26, 2002, the police filed charges and obtained an arrest warrant, but when they attempted to serve Appellant on June 27, 2002, they could not locate him at his home or places of work. N.T., 9/18/17, at 103, 153, Exhibit D-2; N.T., 9/19/17, at 123, 126, 153–154; N.T., 9/20/17, at 56–57; N.T., 10/24/18, at 14, Exhibit D-3. The Commonwealth filed a criminal complaint on July 10, 2002. Docket Entries 1–4; N.T, 10/24/18, at 11, Exhibit D-1.

Upon his return to the United States on July 23, 2016, Appellant was arrested on the outstanding warrant and proceeded to trial on September 18, 2017. N.T., 9/18/17, at 1, 4. The jury convicted him of three counts of rape of a child, 18 Pa.C.S. § 3121(c), and three counts of aggravated indecent assault, 18 Pa.C.S. § 3125(a)(7). N.T., 9/21/17, at 84–87. On January 11, 2018, the trial court sentenced Appellant to incarceration for an aggregate term of eighteen to thirty-six years. N.T., 1/11/18, at 21–22. Appellant filed a timely notice of appeal on February 9, 2018, which he discontinued on May 29, 2018.

Appellant filed a counseled PCRA petition on July 9, 2018, averring that trial counsel was ineffective for failing to file a motion to dismiss under Pa.R.Crim.P. 600 ("Rule 600") and for failing to object to the trial court's jury

- 3 -

instruction on the law of aggravated indecent assault. PCRA Petition, 7/9/18, at ¶¶ 10, 11. Following a hearing on October 24, 2018, the PCRA court denied Appellant's petition on November 15, 2018. This appeal followed. Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents two questions for our consideration:

I.      Did the [PCRA] court err when it denied [Appellant's] motion for Post-Conviction Relief, where his trial counsel failed to file a Motion to Dismiss under Rule 600 of the Pennsylvania Rules of Criminal Procedure on a case that was approximately 14 years old, where the police had filed the criminal complaint in 2002 without apprehending [Appellant], and had made one attempt to locate him over the 14 year period between the filing of the complaint and his apprehension?

II.     Did the [PCRA] court err where it refused to grant [Appellant's] motion for Post Conviction Relief where trial counsel had failed to object to the court's instruction on the law, and where the court's instruction did not inform the jury on the law regarding the overlap between Rape of a Person Less than 13 years under 18 Pa.C.S.A. § 3121 §§ A6 (F1) and Aggravated Indecent Assault of a Person Less than 13 years under 18 Pa.C.S.A. § 3125 §§ 7 (F2)? Specifically if a defendant is convicted of the Rape, he cannot also be convicted of the Aggravated [Indecent] Assault for the same conduct. In this case, he was convicted of both, and without the proper instruction, the record is not clear as to whether the jury intended to convict him of Rape and Aggravated Indecent Assault for the same action, or for different actions.

Appellant's Brief at 6–7.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super.

- 4 -

2015) (quoting **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Robinson**, 139 A.3d 178, 185 (Pa. 2016). We will not disturb the PCRA court's findings unless there is no support for them in the certified record. **Commonwealth v. Lippert**, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Both of Appellant's issues challenge the trial counsel's representation as ineffective. Our Supreme Court has explained the essential elements of an IAC claim as follows:

> To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in **Commonwealth v. Pierce**, 515 Pa. 153, 527 A.2d 973, 975–76 (1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

**Commonwealth v. Paddy**, 15 A.3d 431, 442 (Pa. 2011).

A claim has arguable merit where the factual averments, if accepted as true, could establish a cause for relief. **Commonwealth v. Stewart**, 84 A.3d 701, 707 (Pa. Super. 2013). With regard to the reasonable-basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." **Commonwealth v. Washington**, 927 A.2d 586, 594 (Pa. 2007). We will conclude that counsel's chosen strategy

lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012).

"The burden of proving ineffectiveness rests with Appellant." *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004). "Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness the petitioner must advance sufficient evidence to overcome this presumption." *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016) (citation omitted). Finally, we will not deem counsel ineffective for failing to raise a meritless claim. *Id.* (citation omitted).

Appellant first complains that trial counsel did not file a Rule 600 motion for dismissal of the charges. Appellant's Brief at 15. Specifically, Appellant argues that "the period of delay between the filing of the complaint in 2002 and the apprehension of [Appellant] in 2016 count[s] toward the calculation of the Commonwealth's time for the purposes of Rule 600" because the Commonwealth failed to exercise due diligence in locating and serving

Appellant with an arrest warrant during that period. *Id.* at 16. According to

Appellant, the Commonwealth's lack of due diligence resulted in a violation of

Rule 600, *i.e.*, the failure to bring Appellant's case to trial within 365 days

from the filing of the complaint. *Id.* at 21–22. Appellant concludes that: (1)

his "Rule 600 argument certainly has arguable merit" because the

Commonwealth was required to exercise due diligence; (2) trial counsel could

have "no reasonable basis for failing to file the motion . . . [which] could

have—and should have—resulted in a full dismissal of all charges[;]" and (3)

if defense counsel "had filed the motion . . . full dismissal . . . would certainly

be a different outcome than the lengthy state sentence that he is now

serving." *Id.* at 22–23. Appellant requests we remand for "a hearing to

determine whether the Commonwealth can establish due diligence for the

period of time between the filing of the complaint and the arrest." *Id.* at 28.

In response, the Commonwealth contends that we need "not reach the

merits of the Rule 600 analysis because [Appellant] failed to satisfy his burden

of proof." Commonwealth's Brief at 17. According to the Commonwealth:

> [Appellant] failed to meet his burden with respect to establishing
> the full extent of law enforcement's efforts to locate and
> apprehend him prior to his leaving the country and during his
> absence. Without that evidence, . . . no court could fairly conclude
> that the Commonwealth failed to exercise due diligence on this
> record.
>
> * * *
>
> In this case, [Appellant] failed to offer any such proof at his PCRA
> hearing, offering only the testimony of [trial] counsel who testified
> by identifying a police report from [June] 27, 2002, discussing an

attempt to serve an arrest warrant. N.T. 10/24/18 at 14[, Exhibit D-3]. Counsel simply stated that he was **unaware** of any additional reports showing any other attempts at service. *Id.* at 15. . . .

Conspicuously absent from the evidence [Appellant] offered at the PCRA hearing was any testimony from the investigating officer, or any law enforcement personnel, to detail the extent of their attempts at apprehending [Appellant] at any time on, before or after [June] 27, 2002.

* * *

[Appellant's] request for a Rule 600 hearing [as a form of PCRA relief] was effectively a concession that he did not meet his burden of proving that his claim is meritorious at the PCRA hearing.

*Id.* at 17–19 (emphasis in original).

Upon review of Appellant's Pa.R.A.P. 1925(b) concise statement, we observe that he did not properly preserve his first issue. "Any issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). In his concise statement, Appellant raised a Rule 600 challenge in the context of trial court error, not ineffective assistance of counsel ("IAC"):

1. The trial court erred in failing to grant [Appellant's] Motion for Post Conviction Relief in which he sought a hearing to determine whether the Commonwealth violated his speedy trial rights protected by Rule 600 of the PA Rules of Criminal Procedure. Defense met its burden by a preponderance of the evidence, and the court should have scheduled a hearing to determine whether the Commonwealth had performed due diligence in locating [Appellant] prior to his apprehension. The apprehension took place more than 10 years after the charges were filed, which was beyond 365 days after excludable time.

- 8 -

Concise Statement of Matters Complained of on Appeal, 1/3/19, at ¶ 1. Because Appellant's Rule 1925(b) statement does not present the Rule 600 issue as raised on appeal, *i.e.*, in the context of counsel's ineffectiveness, we should find Appellant's first issue waived. **Lord**, 719 A.2d at 309. We note, however, that the claim raised in Appellant's first issue is the same as that raised in his PCRA petition, wherein he explained the basis for his Rule 600 claim as a matter of counsel's ineffectiveness. PCRA Petition, 7/9/18, at ¶ 10. Moreover, Appellant presented his Rule 600 issue as an IAC claim at the PCRA hearing. N.T., 10/24/18, at 4. Also, the PCRA court and the Commonwealth understood and addressed Appellant's first issue in the context of counsel's ineffectiveness. PCRA Court Opinion, 1/18/19, at 7; Commonwealth's Brief at 12.

Assuming Appellant's first issue is not waived, we conclude it would not warrant relief. In reaching this conclusion, we would rely on the PCRA's January 18, 2019 opinion, which comprehensively and correctly disposed of Appellant's first IAC claim. Specifically, the PCRA court determined—and the record confirms—that Appellant failed to prove prejudice by demonstrating at the PCRA hearing that the Commonwealth did not exercise due diligence in locating and apprehending him during his fourteen-year absence from the United States. PCRA Court Opinion, 1/18/19, at 7–11. Thus, we would agree with the PCRA court that trial counsel was not ineffective in failing to file a Rule 600 motion because it would have been meritless.

In his second issue, Appellant complains that trial counsel failed to challenge the trial court's jury instruction on aggravated indecent assault. Appellant's Brief at 23. According to Appellant, because "conduct cannot be both Aggravated Indecent Assault and Rape at the same time, and if someone is convicted of Rape for a given act, he or she cannot also be convicted of the Aggravated Indecent Assault for the same act." *Id.* at 25–26. Thus, Appellant asserts, he was wrongfully convicted of both aggravated indecent assault and rape because "the jury was not instructed about this provision of the law prior to delivering their verdict, and [trial] counsel did not object to the instruction as it was read on the record." *Id.* at 26 (citation omitted). Specifically, Appellant contends:

> What is not clear is whether the jury convicted [Appellant] for Aggravated Indecent Assault based on the penetration with his penis, or based on other evidence of digital penetration brought forward at trial. . . .
>
> * * *
>
> If the jury had been properly instructed on the law, and had been made aware of the provisions in the statutory language that prevent a Rape from also being an Aggravated Indecent Assault, then we could be totally confident in the integrity of the verdict.

*Id.* at 26–27. Appellant concludes that "the claim is of arguable merit[;]" there was no reasonable basis for not challenging "the faulty" jury instruction; "and the prejudice is obvious [because] he is currently serving consecutive time on the counts of Rape and Aggravated Indecent Assault." *Id.* at 28.

The Commonwealth counters that Appellant's second issue fails to satisfy the arguable-merit and rational-basis prongs of an IAC claim because the trial court instructed the jury in accordance with the Pennsylvania Suggested Standard Jury Instructions ("PSSJI"). Commonwealth's Brief at 23. According to the Commonwealth, "the Pennsylvania Supreme Court has already demonstrated that our appellate courts should reject a claim that counsel was ineffective for failing to object" where the trial court charged members of the jury using the PSSJI. *Id.* (citing **Commonwealth v. Trivigno**, 750 A.2d 243, 253 (Pa. 2000)).

Additionally, the Commonwealth contends that Appellant cannot prove prejudice because the jury heard independent evidence supporting each charge: Appellant touched the victim's vagina with his hand, which supported the conviction for aggravated indecent assault, and Appellant penetrated her vagina with his penis, which supported the rape conviction. Commonwealth's Brief at 24–25. Thus, the Commonwealth concludes, there was "no room for confusion on the part of the jury over the Commonwealth's charge[s]." *Id.* at 25.

Upon review of Appellant's second issue, the certified record in the light most favorable to the Commonwealth as the prevailing party, the briefs of the parties, and the applicable legal authority, we conclude that the PCRA court's thorough and well-crafted opinion entered on January 18, 2019, comprehensively and correctly disposes of Appellant's second IAC claim.

Specifically, the PCRA court determined—and our review of the record confirms—that Appellant failed to demonstrate arguable merit and prejudice because the jury instruction on aggravated indecent assault conformed to the standard jury instructions. *Id.* at 14 (citing ***Commonwealth v. Hunzer***, 868 A.2d 498, 516 (Pa. Super. 2005). Thus, we agree with the PCRA court that trial counsel was not ineffective in failing to challenge the aggravated indecent assault jury instruction, which this court has upheld and was supported by evidence of digital penetration.

Accordingly, we affirm the PCRA court's order dismissing Appellant's PCRA petition, and we do so based on the PCRA court's January 18, 2019 opinion. We direct the parties to attach a copy of that opinion to this decision in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/19

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :   No. CP-46-CR-0006335-2016
:
:
v.   :
:   3607 EDA 2018
IN JOONG KIM   :

## OPINION

**Page, J.**                                                           *January 18, 2019*

Defendant appeals from this Court's Dismissal of his PCRA Petition on November 15,

2018. For the reasons set forth below, Defendant's appeal is without merit. Therefore, any claim

of error on the part of this Court should be dismissed and the ruling should be affirmed.

## FACTS AND PROCEDURAL HISTORY

The Defendant was arrested and charged with various offenses related to the rape of a

child. The Commonwealth alleged that the Defendant raped and sexually abused the victim,

Y.S. when she was ten years old. At trial, the victim's brother testified that in April 2001 his

family, including the victim, himself, and his parents came to America and stayed with their

aunt. N.T. *Jury Trial Volume I* 9/18/17 p. 51. Their aunt was married to the Defendant. *Id.* at

52. The Defendant was responsible for watching the children after school while their parents

worked at the Defendant's store. *Id.* at 54. The Defendant would sometimes take the victim

upstairs to the Defendant's bedroom, and the brother would stay downstairs and watch T.V. *Id.*

at 57.

The victim, Y.S., testified that one day her uncle asked her to come into his room, and

she refused. *Id.* at 81. The Defendant grabbed her wrist, took her into the room, locked the door,

1

and took off all the victim's clothes. *Id.* The Defendant "pulled [her] up so close that it[the clothes] got inside out. And it still, it still is on [her] body so [she could] not move [her] hands or arms." *Id.* at 82. The Defendant kissed her "[f]rom top to bottom" including her vagina. *Id.* at 81. The victim tried to get away, but was unable to escape. *Id.* at 82. The Defendant then "inserted his penis in [her]." *Id.* The Defendant also touched Y.S. with his hands all over her body including her vagina. *Id.* at 87. He told Y.S. not to tell anyone what happened or she and her brother would be killed. *Id.* at 82. The Defendant did this three separate times. *Id.* On the third occasion, Y.S. described bringing a walkie-talkie to attempt to contact her brother, but the Defendant discovered it, and threw the walkie-talkie away from Y.S. *Id.* at 83. During that incident, the victim remembers "from his penis there is some water I think came out." *Id.* The Defendant then made Y.S. wash her body in the bathroom after she had put her clothes on. *Id.* at 84-85.

There was also physical evidence of abuse. Dr. Steven Shapiro testified that Y.S. had chlamydia, and "thinning or absence of the posterior commissure at the base of the vagina" which was consistent with child abuse. N.T. *Jury Trial Volume II* 9/19/17 p. 39. Chlamydia is a sexually transmitted disease. *Id.* at 58. The Defendant alleged that he could not have raped the victim because he had a micro penis which made him physically incapable of the assault. Dr. Shapiro testified that there was insufficient evidence to support a finding of "micro phallus," and that the Defendant was capable of committing the acts alleged by the victim. *Id.* at 52-56.

Chong To Kim, the pastor of the Defendant and the victim's family, was present when the victim's mother accused the Defendant of "deflowering her daughter." *Id.* at 79. The pastor asked the Defendant to come speak to him the next day, but he never returned, and the next communication the pastor received was from the Defendant when he called from Korea less than

2

a week later. *Id.* at 105. The Defendant stated that he left so the victim's mother could "calm down." *Id.* at 84-85. Thereafter, the pastor received phone calls from the Defendant every 1-3 years. *Id.* at 85. Additionally, less than a year after leaving, the pastor helped the Defendant's wife obtain power of attorney to sell the Defendant's businesses and properties at the Defendant's request. *Id.* at 86-87. The Defendant also surrendered his green card. *Id.* at 88.

The Defendant's wife sold all the assets, and then disappeared. *Id.* at 90. The Defendant asked the pastor to attempt to locate her, but he was unable to find her.[1] *Id.* Finally, in 2016, the Defendant contacted the pastor to discuss returning to America. *Id.* at 91. The Defendant asked the pastor to inquire as to whether he was indicted. *Id.* The pastor contacted an attorney, and received paperwork stating that there were no warrants outstanding for the Defendant, faxed those papers to the Defendant, and the Defendant had those papers in his possession when he entered the United States. *Id.* at 97-101.

At the end of April 2002, the report of abuse was made, and the District Attorney decided that based on the report at that time, they would likely not prosecute. *Id.* at 118. On May 6, 2002, following the medical evaluation, Y.S. was diagnosed with Chlamydia, but the detective did not follow up on the case until June 20, 2002. *Id.* at 121-22. Y.S. gave her second statement on June 26, 2002. Charges were then drawn up to be filed based on the additional information. On June 27, 2002, Sgt. Feinstein attempted to locate the Defendant at his home and places of work to serve the arrest warrant, but was unable to find the Defendant. *Id.* at 153; N.T. *Jury Trial Volume III* 9/20/17 p. 56-57.

Flight records indicate that the Defendant traveled domestically within Korea on April 9, 2002, but there are no records of how the Defendant got from America to Korea. N.T. *Jury Trial*

---

[1] Montgomery County Detectives attempted to locate the Defendant's wife prior to trial, but were unable to find her. N.T. *Jury Trial Volume III* 9/20/17 p. 44-45.

*Volume III* 9/20/17 p. 51. The Defendant flew back to America on May 17, 2002, before flying to Korea on May 27, 2002. *Id.* at 52. On June 7, 2002 the Defendant traveled from Korea to America before finally flying back to Korea on June 22, 2002. *Id.* at 52-53. No other flights exist between that time and July of 2016. *Id.* at 53. Both the FBI and ICE checked their records and were unable to find any records of additional flights during that time. *Id.* at 56.

The jury found the Defendant guilty of three counts of rape, not guilty of involuntary deviate sexual intercourse, and guilty of three counts of aggravated indecent assault. On January 11, 2018, this Court sentenced the Defendant to 4 to 8 years on each count of Rape running consecutive to each other. The Defendant was also sentenced to a consecutive 3 to 6 years on Count 7 and 8, Aggravated Indecent Assault. Finally, the Defendant was sentenced to a concurrent 3 to 6 years on Count 9, Aggravated Indecent Assault for an aggregate sentence of 18 to 36 years of incarceration. A direct appeal was filed, and later withdrawn. Defendant filed a counseled PCRA on July 9, 2018. This Court held a PCRA hearing on October 24, 2018, and denied relief on November 15, 2018. On December 12, 2018, the Defendant filed a timely Notice of Appeal.

## ISSUES

Defendant's Concise Statement, received in chambers on January 4, 2019, raises the following issues:

1. The Trial Court erred in failing to grant the Defendant's Motion for Post Conviction Relief in which he sought a hearing to determine whether the Commonwealth violated his speedy trial rights protected by Rule 600 of the PA Rules of Criminal Procedure. Defense met its burden by a preponderance of the evidence, and the court should have scheduled a hearing to determine whether the Commonwealth had performed due diligence in locating the defendant prior to his apprehension. The apprehension took place more than 10 years after the charges were filed, which was beyond 365 days after excludable time.
2. The Trial Court erred in denying Defendant's motion for Post Conviction Relief in which he sought a new trial on the charge of Aggravated Indecent Assault. The jury was not instructed that someone cannot be convicted of Aggravated Indecent Assault and Rape

4

for the same conduct. The conduct giving rise to the Rape conviction would also support a conviction for Aggravated Indecent Assault. The record is not clear as to whether or not the jury based that conviction on the same conduct for which they convicted him of Rape. Trial counsel did not object the (sic) inadequate jury instruction at trial.

## STANDARD OF REVIEW

The standard of review of the order of a PCRA court is whether the determination is supported by the evidence of record and free of legal error. *Commonwealth v. Reaves*, 923 A.2d 1119, 1124 (Pa. 2007). The Appellate Court views the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. Ct. 2001).

In order to prevail on a PCRA petition, the Defendant must "plead and prove by a preponderance of the evidence all of the following: "[t]hat the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted: (i) currently serving a sentence of imprisonment, probation or parole for the crime; (ii) awaiting execution of a sentence of death for the crime; or (iii) serving a sentence which must expire before the person may commence serving the disputed sentence." 42 Pa.C.S.A. § 9543 (1). Additionally, the conviction or sentence must have resulted from one of the following:

(i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.
(iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

5

(iv) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.

(v) Deleted.

(vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced.

(vii) The imposition of a sentence greater than the lawful maximum.

(viii) A proceeding in a tribunal without jurisdiction.

42 Pa.C.S.A. § 9543 (2).

Finally, the allegation of error cannot have been previously litigated or waived and the failure to litigate the issue prior to or during trial, during unitary review, or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel. 42 Pa.C.S.A. § 9543 (3-4).

In reviewing petitions alleging ineffective assistance of counsel, the question of whether ineffective counsel caused prejudice to a defendant is a question of law. *Commonwealth v. Mallory*, 941 A.2d 686, 694 (2008). Where the Appellant raises questions of law, an Appellate Court's standard of review is *de novo* and its scope of review plenary. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012).

## ANALYSIS

In a PCRA petition, ineffective assistance of counsel must "so undermine the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa. C.S. § 9543 (a) (2) (ii). Prejudice is present where there is a reasonable probability, but for counsel's act or omission, the outcome of the proceedings would have been different. *Commonwealth v. Duffey*, 855 A.2d 764, 768–69 (Pa. 2004).

To prove ineffective assistance of counsel, the petitioner must prove the three prongs of *Pierce:* 1) that the claim has arguable merit 2) that counsel lacked a reasonable basis for his or her chosen course, and 3) that the petitioner was prejudiced thereby, i.e., that there is a

6

reasonable probability that the outcome of the proceedings would have been different. *Com. v. Duffey*, 855 A.2d 764, 768–69 (Pa. 2004). The failure to satisfy any prong of this test will cause the entire claim to fail. *See Commonwealth v. Bridges*, 584 Pa. 589, 886 A.2d 1127, 1131 (2005). Finally, "counsel is presumed to be effective and [the defendant] has the burden of proving otherwise." *Commonwealth v. Pond*, 846 A.2d 699, 708 (Pa.Super.2004) (citation omitted).

## I.    **Rule 600**

Defendant alleges a violation of Rule 600. While not delineated in the concise statement, Defendant must be arguing that counsel was ineffective for failing to make a Rule 600 motion prior to trial. Initially, Defendant fails to plead the requisite elements to establish such a violation. Defendant does not argue that the claim has arguable merit or that the Defendant was prejudiced by the failure to file a Rule 600 motion. Rather, Defendant claims that a Rule 600 violation *might* have arguable merit and therefore *might* have prejudiced him. Defendant requests a Rule 600 hearing to determine if his claims have merit. Defendant had a PCRA hearing at which he could have established his entitlement to relief. He has failed to do so. The standard of review for a denial of a Rule 600 Motion is as follows:

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative

7

mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ... courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Plowden*, 2017 PA Super 61, 157 A.3d 933, 936 (Pa. Super. Ct. 2017)

Under Rule 600, a "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600. Further, "for purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600 (C) (1). "The inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. If the delay occurred as a result of circumstances beyond the Commonwealth's control and despite its due diligence, the time is excluded. In determining whether the Commonwealth has exercised due diligence, the courts have explained that "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Plowden*, 2017 PA Super 61, 157 A.3d 933, 937 (Pa. Super. Ct. 2017) (citing Pa.R.Crim.P. 600, Comment (citations omitted)). Any periods of delay resulting from "(a) the unavailability of the defendant or the defendant's attorney; or (b) any continuance granted at the request of the defendant or the defendant's attorney" are

8

excludable delay. *See* Pa.R.Crim.P. 600 (C) (3); *See Generally Commonwealth v. Hunt*, 2004 PA Super 358, ¶ 14, 858 A.2d 1234, 1240 (Pa. Super. Ct. 2004).

Further, the Pennsylvania Supreme Court has clearly explained that the cause of the delay of trial is paramount in the assessment of Rule 600. The Pennsylvania Supreme Court stated that:

> in assessing any period of delay under Rule 600, it is critical to ascertain the *cause* of such delay. Stated in the most general terms, when the Commonwealth causes delay, the Rule 600 clock continues to tick; when the defendant causes delay, the clock stops. This causal relationship between a period of delay and the actions of the parties is a cornerstone not only of the Rule 600 computation, but also of longstanding constitutional speedy trial jurisprudence, as evidenced by the *Barker* Court's inclusion of "the reason for the delay" among the factors to be weighed when considering a speedy-trial claim. *See Barker*, 407 U.S. at 530-31, 92 S.Ct. 2182. In *Steltz*, this Court stressed that the defendant's initial trial date was timely, and that his rescheduled trial facially lay beyond the Rule 600 run date due solely to his absconsion. In such a circumstance, we deemed waiver of the defendant's Rule 600 rights to be a suitable consequence for the defendant's misconduct. Notably, federal appeals courts have applied a similar analysis when considering constitutional speedy-trial claims implicating delays caused by a defendant's unlawful flight or fugitive status. *See, e.g., Cates v. United States*, 379 A.2d 968, 972 (D.C. Cir. 1977) ("[W]here the defendant's unlawful flight or hiding out *is the reason for the delay* in his trial, he is held to have waived his right to a speedy trial.") (emphasis added); *United States v. Cartano*, 420 F.2d 362, 364 (1st Cir. 1970) ("Defendant cannot complain of *any delay attributable to his flight or unavailability.*") (emphasis added).
> This Court has stressed that Rule 600 "was never intended to be used as a device by which a defendant may escape responsibility for his actions." *Commonwealth v. Guldin*, 502 Pa. 66, 463 A.2d 1011, 1014 (1983); *see also Commonwealth v. Brightwell*, 486 Pa. 401, 406 A.2d 503, 506 (1979) (Opinion in Support of Affirmance) ("While Rule [600] is a shield to protect defendants from undue procrastination in the commencement of proceedings against them, we refuse to over-extend the protections afforded by that Rule in a manner that would enable it to be used as a sword to allow the accused to benefit from his own misconduct."). Where, however, the Commonwealth violates Rule 600 before a defendant causes additional delay, concerns relating to the possibility that a defendant may seek to benefit from his own wrongdoing are not implicated.

*Commonwealth v. Barbour*, 189 A.3d 944, 958–59 (Pa. 2018).

In this case, it is true that the Defendant was brought to trial well outside 365 days. In fact, between July 27, 2002 when charges were filed and the police attempted to serve a warrant on

9

the Defendants' home and businesses, and September 17, 2017 when the Defendant's trial began, 5,532 days elapsed. However, the evidence adduced at trial explains exactly what occurred.

The Defendant fled the United States to allow the victim's mother time to "calm down." He then flew between the United States and Korea for the next two and half months while the investigation languished. Finally, on July 22, 2002, the Defendant leaves the jurisdiction of the United States for good. Five days later, charges are filed and the police attempt to serve the Defendant at his home and place of business. When the police are unable to locate the Defendant, the warrant is lodged. The Defendant spends the next 14 years beyond the reach of the Commonwealth, not even returning when his wife takes all their assets and their children, and disappears. In 2016, the Defendant reaches out to his friend and pastor to run a background check to ensure that he has no indictments in America before he crosses back into the jurisdiction of this Country. Through clerical error, the Montgomery County Clerk produces paperwork that states the Defendant had no active warrants. Assured of his freedom from prosecution, the Defendant flies to JFK airport with proof of his lack of warrants in hand. However, the Commonwealth's warrant was indeed still active, and the Defendant is arrested on July 28, 2016 at JKF airport. Following the return of the Defendant to the Commonwealth, numerous defense continuances are made, including a request for a continuance from the original trial date of July 10, 2017. *See* Court Order 6/29/17 J. Page.

No hearing was necessary in this case. The Commonwealth did their due diligence after filing the charges. They attempted to find the Defendant at his places of employment and home address. They filed their warrant in the system. However, they were too late. The Defendant had already absconded from their jurisdiction, and he made sure to remain outside of that jurisdiction until July 28, 2016 when he entered the United States under the mistaken belief that no warrants

10

were active. That time is excludable as delay caused by the Defendant. To hold otherwise would be to permit the Defendant to use Rule 600 as a sword and avoid prosecution by fleeing from justice. The Commonwealth attempted to find the Defendant, and lodged the warrants so that any police who came in contact with the Defendant would arrest him, as would any customs agent if the Defendant attempted to flee after the warrant was lodged. Due diligence does not demand a man hunt. Therefore, the 365 days would begin to run from July 28, 2016, when the Defendant's flight from justice finally came to an end.

Thereafter, trial was scheduled for July 10, 2017, less than 365 days from the Defendant's arrest, and including at least 2 waivers of Rule 600, which would further extend the run date. However, the delay until September from the original trial date (which was within 365 days of the Defendant's return) was due to a defense request for a continuance. Therefore, all delay in this case is attributable to the Defendant, and there is no merit to a Rule 600 claim. As such, counsel could not be ineffective for failing to pursue a meritless claim, and the Defendant could not be prejudiced by the failure to pursue a claim that would fail.

## II. **Jury Charge**

The Defendant also alleges error in not granting a new trial on the charges of Aggravated Indecent Assault. The Defendant alleges counsel was ineffective for failing to object to the "inadequate jury instruction" at trial which did not tell the jury "that someone cannot be convicted of Aggravated Indecent Assault and Rape for the same conduct." A trial court possesses broad discretion in phrasing its instructions to the jury and will not be found to have abused its discretion unless the instructions fail to clearly, adequately, and accurately present the law. *Commonwealth v. Bracey*, 831 A.2d 678 (Pa.Super.2003) (citations omitted). Proper

11

appellate review dictates this Court "consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue." *Commonwealth v. Hunzer*, 2005 PA Super 13, ¶ 51, 868 A.2d 498, 516 (Pa. Super. Ct. 2005) quoting *Commonwealth v. Williams*, 557 Pa. 207, 244, 732 A.2d 1167, 1187 (1999) (citation omitted). Standard instructions for aggravated indecent assault have been previously upheld by the Superior Court. *See Commonwealth v. Hunzer*, 2005 PA Super 13, ¶ 52, 868 A.2d 498, 516 (Pa. Super. Ct. 2005).

Additionally, the Superior Court has upheld convictions for aggravated indecent assault for conduct which also could constitute rape. ("[W]e conclude that the Commonwealth presented sufficient evidence to support Izurieta's convictions. Both Izurieta and the victim testified that Izurieta penetrated the victim's vagina with his penis on May 30, 2014. [...]Under these circumstances, the Commonwealth presented sufficient evidence to convict Izurieta of aggravated indecent assault without consent and indecent assault without consent.") *See Commonwealth v. Izurieta*, 2017 PA Super 307, 171 A.3d 803, 807 (Pa. Super. Ct. 2017).

Finally, jury charges and verdict sheets often do not specify the conduct contained within the various charges. Nevertheless, convictions based on different *allegations* at trial have been upheld. ("The rape charge against appellant was based upon the *allegation* that appellant forcibly engaged in vaginal intercourse with JH. The aggravated indecent assault charge, however, was based upon the *allegation* that appellant sought to forcibly engage in anal intercourse with the victim. [...] Therefore, we find that appellant committed two distinct crimes against the victim and could rightfully be sentenced separately for each violation.") *See Commonwealth v. Montgomery*, 455 Pa.Super. 202, 218, 687 A.2d 1131, 1139 (1996) (emphasis added).

12

First, it is not clear that the Defendant could not be convicted for aggravated indecent assault and rape for the same conduct if that conduct formed the basis of each crime charged. *See Commonwealth v. Izurieta*, 2017 PA Super 307, 171 A.3d 803, 807 (Pa. Super. Ct. 2017). However, even if the Defendant is correct that he could not be convicted for aggravated indecent assault and rape for the same conduct, that particular factual scenario is not the situation in this case. The same conduct did not form the basis for each charge. Rather, each charge was based on different allegations. This was clear to the jury, and the jury was never confused as to what conduct constituted which charges. Indeed, the Commonwealth's closing argument clearly laid out the conduct which formed each charge. Mr. Price, the prosecutor for the Commonwealth stated to the jury during closing arguments:

> I submit to you when he touched her vagina with his hands, the way she described it, that that spells out aggravated indecent assault. When someone takes their fingers and penetrates the vagina with their hands, of a child who is under the age of 13, that is all it is .There is no consent. It is just she is under 13. And so, if believed, that is aggravated indecent assault. But she didn't stop there. She talked about how he took his mouth and put it all over her body. How he kissed and put his mouth on her private parts, on her vagina. Members of the Jury, that is involuntary deviate sexual intercourse. That is penetrating her vagina. And remember, penetration, as you will hear from the Judge, penetration however slight. It doesn't have to enter the vagina; it has to, however slight, go past the labia. And so when he puts his mouth on her vagina, and does what we all know what that is, and licks her there, this is, as she describes it, is involuntary deviate sexual intercourse of a child, of a person under 13. That is all it is. That is all you need. But he didn't stop there. Because he is behind closed doors and her parents aren't home. And because there is no one other than her 9-year-old brother there watching TV in the other room. And because he is in his own room and there is no one there to help her, he takes his time and he takes off his clothes and he takes out his penis and has his way with her. And rubs inside, in her vagina. And she described that. About how he put his penis inside her. In the words of a child, how liquid came out. Members of the Jury, what she described to you is rape. That he took his penis and has sexual intercourse, that he penetrated just past the labia, however slight, with his penis of a child under the 13. (sic). That is rape as it is described by law."

N.T. *Jury Trial Volume IV* 9/21/17 p. 20-21.

13

As the Commonwealth clearly laid out the allegations which supported each charge, there was no confusion for the jury. Different allegations often form the basis for each charge, and it is through the evidence at trial that the Commonwealth explains the conduct underlying each charge. Thus, there was no prejudice to the Defendant where the jury was never told that the same conduct formed the basis for the charges of rape and aggravated indecent assault.

Finally, this Court charged the jury with the standard jury instruction.[2] Those same instructions for aggravated indecent assault have been upheld. *See Commonwealth v. Hunzer*, 2005 PA Super 13, ¶ 52, 868 A.2d 498, 516 (Pa. Super. Ct. 2005). Counsel would reasonably believe that standard jury instructions which had been upheld were sufficient. There is no case law to suggest that the standard jury instructions were deficient, and there was no deviation from the standard instructions such that an allegation that defense counsel was ineffective for failing to request further unspecified instruction had merit. Therefore, Defendant cannot meet the arguable merit, or prejudice prongs of an ineffective assistance of counsel claim. Defendant's counsel was not ineffective for failing to request additional jury instructions for aggravated indecent assault beyond the standard jury instructions.

---

[2] "A person commits rape when the person engages in sexual intercourse with a child who is less than 13 years of age. Under our Crimes Code, such a rape can be committed by either a male or female upon a child of the same or opposite sex. Sexual intercourse has a particular meaning in criminal law. Sexual intercourse occurs if a man's penis penetrates the female sexual organ. The slightest degree of penetration is sufficient. And no emission of semen is required for sexual intercourse to occur under criminal law. The term penetration is not limited to penetration of the vagina. Entrance into the labia is sufficient. It is immaterial whether the child consented to the contact. Consent of the child is no defense. It is also no defense if the Defendant did not know the age of the child, or the child lied about his or her age, or the Defendant honestly believed that the child was 13 or over, or that Defendant reasonably believed that the child was 13 or over." N.T. *Jury Trial Volume IV* 9/21/17 p. 65.

"The Defendant has been charged with aggravated indecent assault. To find the Defendant guilty of this offense you must find the following three elements have been proven beyond a reasonable doubt., First, that the Defendant penetrated, however slightly, the genitals of [Y.S.] with the Defendant's finger or other body part. Second, that the Defendant did not do so for good-faith medical, hygienic or law enforcement procedure purposes. And third, that [Y.S.} was less than 13 years old." N.T. *Jury Trial Volume IV* 9/21/17 p. 67.

14

## CONCLUSION

For all of the aforementioned reasons, this Court's decision and order should be

**AFFIRMED**.

BY THE COURT:

_____
GARRETT D. PAGE,          J.

Copies of the above Opinion
Mailed on *1-18-19*
By Interoffice Mail to:
Robert Falin, Esq., DDA
Todd Barnes, ADA
Anne Schools – Court Administration
By First Class Mail to:
Nicholas Reifsnyder, Esquire
In Joong Kim, Defendant

Judicial Secretary

15